Michael BARANCIK, Appellant,

v.

Paula MEADE, Respondent.

No. WD 61090.

Missouri Court of Appeals,
Western District.

June 10, 2003.

584

Michaela C. Shelton, Overland Park, KS, William Shull, Liberty, for Appellant.

Lloyd Koelker, Kansas City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Father, Michael Barancik, appeals from the circuit court's Judgment of Modification of Parenting Time. He contends first that the trial court erred in changing legal custody from the original decree because no modification was sought in any pleading. Secondly, he asserts that the trial

court improperly restricted Father's visitation without making the findings required by Section 452.400.2, RSMo.[1] For his third point, Father complains that there was no substantial or competent evidence to support the requirement of the court's order that his child not be left alone with his step-son and that the trial court should have appointed a guardian ad litem, if it felt that abuse had occurred. Finally, he contends that the trial court improperly awarded attorney fees to wife. We affirm in part and reverse in part.

## Facts

Father and Mother, Paula Meade, married on February 8, 1986. They divorced on May 10, 1995. During their marriage, they had one child together, Mikhail Barancik ("child"), who was born in 1993. At the time of their divorce, Mother and Father, in their Marital Separation Agreement, agreed that Mother would have custody of the child with Father having specific rights of visitation. The circuit court, in the Decree of Dissolution, found it to be in the best interest of the child that Mother "be awarded custody of the child" and Father "be awarded specific and reasonable rights of visitation."

The Dissolution Decree awarded Father visitation every Sunday and Thursday and alternating Saturdays. Father was also awarded reasonable holiday visitation to be determined by the parties on a holiday by holiday basis, and three weeks of summer visits.

On December 4, 2000, Father filed a Motion to Modify Parenting Time. Between the time of the original dissolution and Father's motion, Mother moved from Overland Park, Kansas, to Ozawkie, Kansas (near Topeka), with the child. Father had remarried and moved to Liberty, Missouri. Father contended in his motion that because of the distance between Father and the child, he and Mother had orally agreed that he have liberal visitation during the weekends and liberal visitation during the summer. Father also alleged that the parties had agreed that he have visitation three weekends each month. According to Father, on November 29, 2000, Mother told Father that he could only have visitation on alternating weekends. In his motion, Father requested that he be awarded visitation as set forth in his proposed parenting plan. Father's proposed parenting plan was not included in the legal file on appeal.

Mother filed an answer and counter-motion to modify asking the court to enter an order requiring Father to pay her attorney fees and costs of the action. On April 5, 2001, Father filed a motion for contempt arguing that Mother had denied him specific parenting time on January 21, 2001 (a Sunday), and March 4, 2001 (a Sunday).

At the hearing on the motions, Father indicated that he was also requesting joint legal custody but filed no pleading seeking that relief. Father asked for visitation every other weekend from Friday to Sunday and visitation every Thursday after school until 8 P.M. Father also requested that in the summer he have visitation every other weekend from Thursday until Sunday. According to Father's testimony, he was also requesting a specific holiday visitation schedule. This proposed schedule was not set out in his testimony nor is it contained elsewhere in the record before this court. Father also requested visitation with the child for the first four weeks of summer and then for two weeks later in the summer. Father testified that he was requesting visitation for the first four weeks of summer in order for the child to

---

**1.** All statutory references are to RSMo 2000 unless otherwise indicated.

attend the Liberty summer school program.

Mother testified that she was awarded sole custody of the child in the divorce from Father in 1995. She agreed that she and Father had followed the visitation portion of the dissolution decree. The original decree was not specific, in that it did not set forth start and end times for visitation. The parties, however, had worked together in determining visitation times and arrangements from the time after the divorce and until the end of 1999. Generally, Father had visitation with the child every other weekend. Prior to 2001, according to Mother, Father never exercised his right to visitation for three weeks in the summer.

Mother requested that the court order summer visitation as two weeks with Mother and two weeks with Father until the end of summer. In the alternative, Mother requested that she have the child the first six weeks of summer and Father have visitation the second six weeks of summer. Mother said that if the child was with her in the first six weeks of summer the child could play baseball in her area with his schoolmates. Mother testified that in January 2001, after following their informal agreement of visitation every other weekend for six years, things broke down between the parties and that Father indicated that he wanted to follow the original decree.

Father testified that, in the past, he was denied visitation, which precipitated his motion for contempt. He indicated he was denied two weekend visitations in January and one of his Thursday visitations. Father said he also did not have visitation on the previous Thanksgiving holiday. Father requested that the trial court award him compensatory visitation time to make up for the times he missed visitation with the child. Mother testified that Father

did receive extra visitations and both parties deviated from the arrangements.

The child participates on basketball and baseball teams in the Topeka area. Mother stated that she would like to see the child continue his participation with these sports as long as the child is interested. Mother said that there had been scheduling conflicts with Father's parenting time and the child's athletic events. Mother does not create the schedule for practices and games, which is created by the league and coaches. She believes it would be very beneficial to the child for Father to support the child in his athletic events. She testified that for Father to attend the child's games or practices would be a great opportunity for Father to spend extra time with the child.

Father testified that an area of contention between he and Mother was the child's participation in sporting activities in Topeka during his parenting time. Father indicated he tried to work with Mother and trade visitation days so the child could participate in the events but Mother would not switch days with Father when a sporting activity was on Father's parenting time. Father has a membership to Liberty Community Centers and the child was playing basketball and swimming at the Community Center during his parenting time. Father said that, if the child had a basketball game in Topeka on a Saturday during his parenting time, if he could not attend the game that he would be willing to switch days so the child could still participate in the basketball game.

Mother attended college on a volleyball scholarship and, at the time of trial, still actively participated in athletics. Mother indicated that participation in athletic events is very important to her and a very good benefit to her son. She believes that it helps the child to develop self-confidence and respect for his peers and also respect

for authority. Mother averred that the social part of athletic participation for the child is important because he is an only child. In addition, Mother stressed that participation in athletics is important to the child's physical development.

Mother also testified that she had concern that Father's fifteen year-old stepson, Spencer, not be left alone with the child. She said the child came home after a visit with Father with marks on his face. Mother said the child's face was swollen with a red mark and the mark did not look like a bug bite. She said the child was very apprehensive and scared to explain what happened. Mother was concerned Spencer had injured the child.

Father said that Mother had expressed no concerns to him about the child being around his stepson Spencer without supervision. Father indicated, however, that he was surprised by a complaint made to Kansas SRS about Spencer and his treatment of the child. The complaint was not substantiated and according to Father, the child had received a bug bite and not an injury from Spencer. Father said the child and Spencer are "inseparable."

After the hearing, the court issued its Judgment of Modification of Parenting Time. The court's judgment denied "Father's Motion to Modify Legal Custody." [2] The court also denied Father's motion for contempt because for most of the child's life, and by agreement of the parents, "the parties did not follow the time sharing arrangements set forth in the original judgment." The circuit court terminated the prior orders of visitation and ordered the parties to comply with a new parenting plan attached to the judgment. The court also ordered Father to pay $2,000 for Mother's attorney fees.

The court found it to be in the best interests of the child to be placed in Mother's sole legal and physical custody subject to Father's rights of reasonable parenting time. The trial court awarded Father visitation during the school year every other weekend from school recess Friday to 5 P.M. Sunday. In addition, Father will spend Thursday evenings with the child after school until 7 P.M. during the school year. During the summer, the child will spend every other weekend with Father from 6 P.M. Thursday to 6 P.M. Sunday. The court also awarded Father visitation on certain holidays like Father's Day, Father's birthday, and on major holidays every other year. Father will have visitation with the child for six weeks during the summer.

The court ordered the parents to confer with each other prior to enrolling the child in any extracurricular activities. Mother was given the authority to make the final decision regarding the child's participation in extracurricular activities. Further, the court ordered that the child "shall not miss games or practices on Thursday or weekend visits." Finally, the court ordered that the child not be left alone with Father's teenage stepson.

### Standard of Review

Review of a trial court's judgment modifying child custody is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Weaver v. Kelling*, 18 S.W.3d 525, 528 (Mo.App.2000). This court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* In reviewing the record, this

---

**2.** Although Father did not request a change in custody in his written motion, at the hearing he requested joint legal custody.

court reviews the evidence in the light most favorable to the trial court's judgment and defers to the trial court's credibility determinations. *M.F.M. v. J.O.M.*, 889 S.W.2d 944, 949 (Mo.App.1995). Trial courts are given greater deference in child custody matters than in other cases. *Newell v. Rammage*, 7 S.W.3d 517 (Mo. App.1999).

## Issues on Appeal

### I

### *Did the court err in awarding sole legal custody to Mother?*

■ Father contends the trial court erred in awarding sole legal custody of the minor child to Mother because the ruling misapplied the law in two ways: (1) the only motion before the court was Father's motion to modify visitation, not custody; and (2) there was no evidence to support the court's finding that the parties did not share a commonality of beliefs sufficient to justify a change of legal custody, in that the evidence only showed that for a relatively brief period of time the parties could not agree upon a visitation schedule after Mother moved to Ozawkie, Kansas.

Mother responds the court did not change legal custody. Mother was awarded sole legal custody in the dissolution decree in 1995. Further, Father did request a change in legal custody at the hearing. Father argues the only motion before the court was a motion to modify visitation; thus, the court erred in awarding sole legal custody to Mother. In his brief Father contends, "[T]he judge improperly divested Michael of joint legal custody[.]" However, there is nothing in the record to support Father's contention that he was ever awarded joint legal custody.

■ In the 1995 dissolution, the trial court found, "That [it] is in the best inter-est of said minor child that [Mother] be awarded custody of said minor child ... with [Father] paying ... child support[.]" Further, the trial court found that it is in the best interest of the minor child that Father be awarded specific and reasonable rights of visitation with the minor child. The terms "care, custody, and control" include legal and physical custody. *See McCallister v. McCallister*, 57 S.W.3d 321, 328 (Mo.App.2001); *see also Nix v. Nix*, 862 S.W.2d 948, 951 (Mo.App.1993) (Southern District concluded that "primary care, custody and control" to mother with reasonable rights of visitation to father gave mother sole legal custody and joint physical custody to mother and father because there were significant periods of time during which the children were to reside with father).

Although the trial court did not use the terms "sole custody" in the decree, from the language of the court and the legal precedent, it can be ascertained that the intent was to award Mother sole legal custody and grant Father rights of visitation. In addition, agreements of the parties with respect to child custody and visitation are advisory to the trial court. *See Lambert v. Lambert*, 593 S.W.2d 613, 615 (Mo.App.1980). The language in the 1995 Marital Separation Agreement of the parties in the instant case is as follows:

> Custody: The parties agree that the Wife shall have care, custody, and control of the minor child of the marriage
> . . .
> Visitation: The parties agree that the Husband shall have reasonable and specific rights of visitation with the child
> . . .

Here, in their separation agreement, the parties advised the trial court of their wishes that Mother have sole custody and Father have rights of visitation with the child. The court in the decree of dissolu-

tion followed the wishes of the parties by awarding Mother sole custody and awarding Father rights of visitation. Because the court did not modify custody in its 2002 judgment by awarding Mother sole custody, Father's arguments that the court erred in modifying custody and that there was no evidence to support modification of custody have no merit.

Father further argues the court erred in the judgment when it stated, "Father's Motion to Modify Legal Custody is **denied.**" (emphasis in original) Father maintains that this issue was not before the court. However, not only did the court not modify custody, Father did raise this issue at the hearing when he indicated that he was requesting joint legal custody. We see this entry as being proper housecleaning, to ensure that there was no confusion or possible argument that the issue had been raised and not decided.

## II

*Did the trial court err in restricting Father's visitation by including the provision that the child shall not miss games or practices during Father's Thursday or Weekend visits?*

■ Father argues the trial court erred when it improperly restricted Father's visitation by including the "overbroad and unnecessary" provision that the child shall not miss games or practices on Father's Thursday or weekend visits because this ruling misapplied the law in that "this Draconian provision" restricted Father's visitation rights contrary to Section 452.400.2, RSMo, and there was no finding by the court that this restriction was necessary to keep from endangering the child's physical health or impairing his emotional development.

Mother argues that Father's visitation was not restricted and, in fact, was ex-

panded from the 1995 judgment. Mother points out that Father's summer visitation was doubled to six weeks and his weekend time was expanded to all weekend, including overnight, from the Sunday, Thursday, and alternating Saturday prior schedule.

■ The trial court may modify visitation rights "whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." § 452.400.2, RSMo. Our Supreme Court in *Turley v. Turley,* 5 S.W.3d 162, 165 (Mo. banc 1999), using a plain-language analysis of the term "restrict," utilized the definition found in *Webster's Third New International Dictionary* 1937 (1981), which defines "restrict" as "to set bounds or limits to" or "to check, bound, or decrease the range, scope or incidence of." *Id.* The court held: "For sec. 452.400.2 to apply, the modification must restrict or limit one party's visitation rights compared to their visitation rights under the original agreement." *Id.*

In *Turley,* Ms. Turley filed a motion to modify Mr. Turley's visitation rights granted under a prior separation agreement. *Id.* at 163. The trial court subsequently modified the original judgment ordering Mr. Turley, who lived on a family farm location approximately 168 miles from Jefferson City, to confine future visitation with his child to Jefferson City, where Ms. Turley resided, during the months of December, January, and February. *Id.* at 164. The Supreme Court reversed and remanded, holding that the confinement of Mr. Turley's visitation to Jefferson City for three months per year constituted a "restriction" under Section 452.400.2. *Id.* at 165.

The Supreme Court in *Turley* left open the question of whether the "shortening or

elimination of a visitation period" rose to the level of a restriction within the meaning of Section 452.400.2. *Id.* at 165 n. 2. In *Loebner v. Loebner*, 71 S.W.3d 248, 258 (Mo.App.2002), the Eastern District concluded, pursuant to the definition of "restrict" in *Turley*, as well as the Supreme Court's holding that Section 452.400.2 applies when a modification restricts or limits one party's visitation rights compared to the visitation rights under an original agreement, that the reduction of visitation hours is a restriction under Section 452.400.3. In *Loebner*, a father's visitation hours were reduced in the amended judgment by 16.75 hours per two-week period from the original decree. The court held the modification that reduced father's hours of visitation with daughter was a restriction under Section 452.400.2 and, thus, it was necessary for the trial court to make a finding as to whether the original visitation would endanger the daughter's physical health or impair her emotional development. *Loebner*, 71 S.W.3d at 258.

This court distinguished *Loebner* in *Searcy v. Searcy*, 85 S.W.3d 95, 103 (Mo.App. 2002), where the modification of Mr. Searcy's visitation rights shortened his visitation time an average of only eight hours every month, "a substantially less onerous modification and one that distinguishes this case from *Loebner*." *Id.* This Court held, "The trial court must have some leeway to modify visitation in the children's best interests without having to make findings under § 452.400.2 every time that it does so." *Id.* This court determined that the term "restriction" means something more than a modest shortening of visitation to accommodate the children's best interests in performing well in school. *Id.*

In the instant case, at first glance, it appears Father's visitation time was increased as Mother argues. Under the 2002 judgment, Father receives six weeks of visitation in the summer, as opposed to three weeks visitation under the 1995 decree. Further, Father was awarded every other weekend from Friday to Sunday during the school year and Thursday through Sunday during the summer when the child is not with him for the six week visitation. In addition, Father is to spend every Thursday evening with the child. Under the 1995 decree, Father only had visitation Thursday evenings and Sundays and every other Saturday. However, there was no restriction of Father's visitation in the 1995 decree that the children not miss extracurricular practices or games.

In the 2002 judgment, the trial court ordered the parties to confer with each other prior to enrolling the child in any extracurricular activities such as sports, camps, lessons, etc. But the court ordered Mother to make the final decision regarding the child's participation in extracurricular activities and ordered that child "shall not miss games or practices on Thursday or weekend visits." The trial court's order amounts to something more than a modest shortening of father's visitation based on a number of factors. Mother makes the final decision regarding child's participation in extracurricular activities and the child cannot miss games or practices during Father's visitation. The child's games and practices are in Topeka and Father lives in Liberty. The trial court did not allow for Father to have rescheduled or compensatory visitation time on days when child does not have games or practices when there is a conflict. Under the trial court's order, there could potentially be many times when Father could not exercise visitation at all because visitation would conflict with the child's games or practices or Father's visitation would be restricted to the Topeka area where games and practices are held. The facts here are more

akin to the restriction in *Turley* where the father could only have visitation in Jefferson City, than the facts in *Searcy* where father's visitation was reduced by only eight hours per month.

Although it may be in the child's best interests to allow and encourage the child to participate in athletics or other extracurricular activities, it is equally in the child's best interests that he have a regular, consistent pattern of visitation with the Father. This court recognizes the almost practical impossibility of always accommodating the desires and needs of the parents and the ever increasing multitude of athletic and other extracurricular activities that children now have available. We are equally aware that these conflicts are not unique to divorced families. Nevertheless, where divorce has terminated the opportunity for frequent, daily conduct with children on even routine and mundane issues, the importance of regular blocks of visitation time between divorced parents and their children is particularly important.

We recognize that these potential conflicts between child activities and parental visitation are difficult for courts to resolve. It would be far more efficient and positive for all, including the child, if the parents could work out this conflict on their own. The record, however, indicates an inability or unwillingness to do so. Thus, it is incumbent for the trial court, if it finds that the extracurricular activities are sufficiently important, to still accommodate Father's regular visitation without restricting it to only times when the child has no such activities. Because the modification restricted Father's visitation with the child, it was necessary for the trial court to make a finding as to whether the chance that the child might miss certain extracurricular activities would endanger the child's physical health or impair his emotional development to such an extent that the Father's

visitation should be restricted. *Turley*, 5 S.W.3d at 165; Section 452.400.2. We reverse and remand the judgment for reconsideration of the trial court's judgment with respect to restrictions of Father's visitation.

## III

### *Did the court err in providing in its judgment that the child not be left alone with Father's stepson without appointing a guardian ad litem in this case?*

▆▆▆▆ Father argues the court erred in providing that the child is not to be left alone with Father's stepson because this portion of the court's judgment was based entirely upon unsupported allegations of abuse and neglect and the trial court failed to appoint a guardian ad litem as required by Section 452.423.1. Mother responds the court was not required to appoint a guardian ad litem because there were no pleadings alleging abuse or neglect, no motion made by Father for appointment of a guardian ad litem, and the court made no findings of abuse or neglect. She asserts that the court was authorized to enter the order restricting contact with the stepson as it was reasonable based on the evidence. Further, Mother argues the stepson has no statutory right to contact with the child and is not a party to this action. Nothing in the record indicates the stepson resides with Father.

▆▆▆▆ Whenever abuse or neglect of a child is alleged in pleadings or motions, the appointment of a guardian ad litem is mandatory under Section 452.423.1, RSMo. *Frazier v. Frazier*, 845 S.W.2d 130, 131 (Mo.App.1993). The mandatory appointment of a guardian ad litem pursuant to this section is triggered by an allegation of child abuse or neglect expressly stated in a pleading. *Rombach v. Rombach*, 867

S.W.2d 500, 503 (Mo. banc 1993). "For a guardian ad litem to be of the most benefit to the child, he or she must be involved from the pleading stage of the lawsuit." *Id.* In the instant case, there was no allegation of child abuse or neglect in any pleading. At the hearing, Mother indicated that she was concerned that the child not be around Father's stepson when Father was not also present. Mother said that one time the child came home from his Father's with marks on his face and that the child was scared and apprehensive to explain to Mother what happened. Mother introduced photographs of the child's face taken when the child came home with the red marks on his face. Later in the hearing, the court asked Mother to restate her concerns about the stepson. Mother indicated that when she saw the marks on the child she thought it was not good to have a seven-year-old boy and a fifteen-year-old wrestling around. She asked the child if the stepson hit him and the child indicated that he did and that he would tell his Father when it happened and tell him to stop. Mother indicated that her concern was that "it sounds to me that there's some unsupervised roughhousing around."

■ Father did not object to the evidence concerning stepson at trial. The language of Rule 55.33(b), which provides for the amendment of pleadings at trial, indicates that if evidence is not objected to and it raises an issue that is tried by the implied or express consent of the parties, the issue shall be treated as if it were alleged and a motion to formally amend may be made even after judgment. *Rombach*, 867 S.W.2d at 503. "The only discretion allowed the trial court is in determining whether the issue was tried by "implied consent" of the parties." *Id.* If so, the trial court shall treat the pleading as if the issues had been properly raised.

Because Father neither objected to the introduction of the evidence nor made a motion to the trial court to conform the pleadings to the evidence, we can only continue our review to determine whether the failure to appoint a guardian ad litem was plain error pursuant to Rule 84.13(c). *See Rombach*, 867 S.W.2d at 504.

■ If sufficient evidence exists that, if believed, shows actual abuse or neglect occurred, the court, either upon motion of a party or *sua sponte*, should order the pleadings amended to conform to the evidence and appoint a guardian ad litem. *Id.*

We must determine whether evidence of actual abuse or neglect existed. *Id.* "Abuse" is defined as "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for his care, custody, and control except that discipline including spanking, administered in a reasonable manner shall not be construed to be abuse." *Id.* § 210.110(1). "Neglect" is "failure to provide by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for his well-being." *Rombach*, 867 S.W.2d at 504; § 210.110(5), RSMo.

Based on our review of the evidence presented at trial, Mother did not make allegations of abuse or neglect, but only voiced a concern that the child and stepson not be allowed to "roughhouse" unsupervised. There was no testimony that the child was injured by anything other than the boys engaging in activities in which children often engage, *i.e.*, wrestling. There was no testimony that the child was injured by means other than accidental. There was no evidence of neglect. Thus, the trial court did not err in failing to *sua sponte* appoint a guardian at litem. *See*

*Cutting v. Cutting,* 39 S.W.3d 540, 544 (Mo.App.2001).

Father focuses his argument on Section 452.423.1 and the trial court's failure to appoint a guardian ad litem. Father does not argue that the court's requirement that the child not be left alone with the stepson places a restriction on his visitation without a finding that the visitation would endanger the child's physical health or impair his emotional development. § 452.400, RSMo. Because we are reversing and remanding the judgment for reconsideration of the trial court's judgment with respect to restrictions of Father's visitation, the trial court should reconsider all restrictions of Father's visitation in its judgment, including that the child not be left alone with Father's stepson.

## IV

### *Did the court err in ordering Father to pay $2000 of Mother's attorney fees?*

■ Father argues the court clearly erred in ordering Father to pay $2,000 of Mother's attorney fees because this was unsupported by the evidence and misapplied the law, arguing there was insufficient evidence of the parties' financial resources and that the court failed to consider that Mother's move from the Kansas City area and her refusal to comply with visitation provisions necessitated Father's motions for contempt and modification of visitation. Father acknowledges that testimony was elicited from Mother regarding her annual income and that she had recently become unemployed.

Mother responds that attorney fees were appropriate in that: (1) Father's conduct before and during the litigation was reprehensible; (2) Father was represented during parts of the litigation by his attor-ney-spouse, presumably for free; and, (3) at the time of the hearing, Father was employed and Mother was not.

Father argues there was insufficient evidence of the parties' financial resources before the trial court to support the court's award, and the trial court failed to consider that Mother's move from the Kansas City area and her refusal to comply with the visitation provisions of the dissolution decree necessitated Father's motions for contempt and to modify visitation. Father admits that testimony was elicited regarding Mother's annual income and that she had recently become unemployed; yet, he argues this evidence was not sufficient. We agree. There is insufficient substantial evidence to support the trial court's award of attorney fees to Mother.

■ As a general rule, parties to a domestic relation's case are to pay their own attorney fees. *In re Marriage of Trimble,* 978 S.W.2d 55, 58 (Mo.App.1998). A court is permitted, though not required, to award attorney fees under Section 452.355.1, RSMo. Under Section 452.355.1, the court, from time to time, after considering all relevant factors, including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to Sections 452.300 to 452.425 and for attorney fees.

■ The trial court has wide discretion in awarding attorney fees. *Siegenthaler v. Siegenthaler,* 761 S.W.2d 262, 266–67 (Mo.App.1988). The trial court's award of attorney fees will not be disturbed on appeal absent an abuse of discretion. *Meierer v. Meierer,* 876 S.W.2d 36, 38 (Mo.App.1994).

The evidence, in this case, of the financial resources of both parties is scant. Father indicated that he earns $15 an hour as an investigator at a law firm. Father's wages for the previous year, 2000, were also in evidence. The only evidence of Mother's financial resources was that she was unemployed at the time of the hearing. Mother's wages for the previous year were not in evidence in the form of tax returns or otherwise. The record does not contain any statements of property or the amount of debt of each party.

Section 452.355.1 empowers a trial court to award attorney fees only "after considering all relevant factors including the financial resources of both parties." Exactly how all relevant factors balance will vary from case to case. *See Nix v. Nix,* 862 S.W.2d 948, 952 (Mo.App. 1993). A court is always required to consider the financial resources of both parties before deciding a request for attorney fees. *Trimble,* 978 S.W.2d at 59. "[I]n the absence of evidence as to the parties' financial resources, an award of attorney fees cannot be supported." *Id.* (*citing Gentry v. Simmons,* 754 S.W.2d 579, 584 (Mo.App.1988)).

There was evidence of the parties' actions during the pendency of the instant case in that testimony indicated Father told Mother he had a "free lawyer." He also told her that he was "going to litigate [her] to death, and I hope you have the money." Without evidence of the financial resources of both parties, Father's comments alone, although immature and inappropriate, would not warrant an award of attorney fees for Mother.

The only evidence of Mother's financial resources was that she was unemployed at the time of trial. Although present earnings are among the relevant factors to be considered in awarding attorney fees, a court must know what debts each party owes and what non-employment income each party has before it can determine either need or ability to pay. *See Crews v. Crews,* 949 S.W.2d 659, 672 (Mo.App.1997); *Trimble,* 978 S.W.2d at 59.

The award of attorney fees in this case was not supported by competent and substantial evidence and amounts to an abuse of discretion. Father's fourth point on appeal is granted.

We reverse that part of the trial court's judgment modifying Father's visitation by imposing restrictions on Father's visitation without finding the original visitation would endanger the child's physical health or impair his emotional development. We also reverse the part of the judgment awarding Mother attorney fees. We affirm the judgment in all other respects.

PAUL M. SPINDEN, Judge, and
JAMES M. SMART, JR., Judge, concur.