Jody L. (Cornwell) JARRETT, Appellant,

v.

Stanley D. CORNWELL, Respondent.

No. WD 62511.

Missouri Court of Appeals,
Western District.

April 6, 2004.

Michael Chester McIntosh, Independence, MO, for Appellant.

Elvin S. Douglas, Jr., Harrisonville, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, Jr., JJ.

JAMES M. SMART, JR., Judge.

Jody (Cornwell) Jarrett ("Mother") appeals the trial court's judgment modifying the child support and visitation provisions of the original decree that dissolved her marriage to Stanley Cornwell ("Father"). Mother contends the trial court improperly restricted her visitation time and erred in its calculation of child support. We affirm.

### Statement of Facts

After having been married twelve years, the parties dissolved their marriage in October 2000. Under the original dissolution decree, the parties were awarded joint legal and physical custody of their two sons; Father's home address was designated the children's residential address for all purposes of law and education; neither party was ordered to pay child support; Mother was to carry health insurance on the children; and Father was to pay for medical co-pays and child care. With regard to child support, the dissolution court found that, under the circumstances of the case, the Form 14 amounts were unjust and inappropriate; that no child support should be paid by either party; that each party would be responsible for the support of the children while in their respective custody; and that "[a]ll other support needs of the children shall be shared equally by the parties." The court also found that there was one child, not of the marriage, residing in Father's primary physical custody and that Father received no child support from that child's mother.

Under the original parenting plan, the children were to reside with Mother every other week from 9:00 a.m. Saturday until 8:00 a.m. Monday. The plan also provided that the "primary residence" [1] of the pre-school age children would be with Father and that the "primary residence" of the school-age children would be with Father from 4:30 p.m. to 6:20 a.m. daily.[2] (Presumably, this meant during the week while they were in school, although that is not completely clear.) The children's "primary residence" during Christmas break, spring break, and summer vacation was to be with Father. The children were to spend one-half of both Christmas break and spring break with Mother, as well as three weeks during the summer. The parenting plan also granted Mother visitation

---

1. Although the dissolution court, the modification court, and the parties use the terms "primary residence" and "primary physical custody," the term "primary physical custody" is not a statutorily recognized concept. *See Loumiet v. Loumiet*, 103 S.W.3d 332, 338 (Mo.App.2003). Because the dissolution court awarded joint legal and physical custody the term "primary physical custody" is used by the parties to denote that Father would have a greater share of the children's physical custody than Mother. *See In re*

*Emig*, 117 S.W.3d 174, 179, n. 5 (Mo.App. 2003).

2. Mother claims that the original decree provided for her to have the children from 6:20 a.m. to 4:00 p.m. every day, and Father from 4:00 p.m. to 6:20 a.m., but the record does not support this. Although the original decree admittedly is not a model of clarity, nothing indicates that Mother was to have the children from 6:20 a.m. to 4:00 p.m.

at all other times on a reasonable basis upon request.

The original parenting plan was based on Mother's evening-shift work schedule. Before the decree was final, however, Mother's work schedule changed. The parties voluntarily adjusted the schedule accordingly. Under her new work schedule, Mother was off work on Thursdays, Fridays, and Saturdays. The improvised parenting schedule (which the parties followed until about six months before the modification hearing) allowed Mother to have the children from Wednesday evening, when she got off work, until Sunday evening one week, and from Wednesday evening until Saturday morning or afternoon the next week.

In August of 2002 (before the modification hearing in January), Father refused to allow the children to spend Thursday nights with Mother any longer. Father testified that the children routinely had tests on Fridays. He believed the children could better prepare if they were at his house on Thursday nights. During this time period, then, the children were with Mother from Wednesday night until Thursday morning and from Friday night until Saturday morning or afternoon—depending on how the Saturday exchange of the children was worked out. Every other weekend, the children spent Friday night until Sunday night at Mother's.

Mother filed a motion to modify as to custody, support, and visitation. Mother asked the court to grant "primary physical custody" of the children to her (presumably meaning sole physical custody) and to order Father to pay child support. Father filed a counter-motion to modify, seeking child support. The boys were ages thirteen and eight at the time of the modification hearing and attended school in the Belton school district. Mother lived in a different school district. A Belton school official testified that the boys probably would not qualify to attend their same schools if they lived with Mother.

Father testified at the hearing that his twenty-year-old daughter from a prior marriage lived with him and the two boys. The daughter was attending college full-time at the time of trial, but living at home. The daughter did not attend college the fall semester following her high school graduation, however. Father testified that she "took a year off" but did not elaborate further.

In its January 10, 2003, judgment, the court denied Mother's motions as to change of custody and child support, and granted Father's motion as to child support.[3] Finding that "a modification of visitation rights serves the best interest of the minor children," the court also modified the parenting schedule. The court's parenting plan (which was based substantially on Father's proposed parenting plan) called for Mother to have the children every other weekend from 5:30 p.m. Friday until 6:00 p.m. Sunday; every Wednesday evening from 5:30 p.m. to 8:30 p.m.; and every Friday evening 5:30 p.m. to noon on Saturday when Mother does not have weekend visitation. The schedule was essentially the same as that being practiced at the time of the modification hearing with the exception of the Wednesday overnights. To compensate for the loss of time during the week, the court expanded Mother's summer visitation to

---

**3.** Although the modification judgment states that the original decree granted "primary physical custody" to Father, when in fact it awarded joint physical custody with Father's residence designated as the children's, we conclude that the motion court's use of this term is merely intended to denote that Father had physical custody of the children for a greater share of the time. *See* n. 1, *supra*.

six consecutive weeks and implemented a more specific and equitable holiday schedule.

With regard to child support, the court found that there had been a continuous and substantial change of circumstances—*i.e.*, that Mother is now gainfully employed at a good salary and has not contributed significantly to the children's support and maintenance—and that an award of child support in favor of Father was therefore appropriate. The court rejected the parties' Form 14 worksheets and calculated its own. The court's Form 14 showed a credit of $611.00 on line 2(c) to Father based on his support obligation to his daughter who was considered by the court to be in his primary physical custody. Based on its Form 14 calculation, the court ordered Mother to pay $527.00 monthly in child support. The court ordered both parents to cover the children on their health insurance at work and ordered Mother and Father to split the following costs fifty-fifty: orthodontics expenses, musical instrument rental costs, and all non-covered medical costs. The cost for child care was included in the Form 14 calculation.

Mother appeals the trial court's award of child support and modification of visitation.

### Standard of Review

 Review of a judgment modifying a dissolution decree is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), under which we will affirm the trial court's judgment if there is substantial evidence to support it, it is not against the weight of the evidence, and it does not erroneously declare or erroneously apply the law. *Barancik v. Meade*, 106 S.W.3d 582, 587 (Mo.App.2003). In so doing, we view the evidence in the light most favorable to the trial court's judgment and de-

fer to the trial court's credibility determinations. *Searcy v. Searcy*, 85 S.W.3d 95, 99 (Mo.App.2002). "Trial courts are given greater deference in child custody matters than in other cases." *Barancik*, 106 S.W.3d at 588.

### Point I: Restriction on Visitation

 In her first point, Mother argues that the trial court's reduction of her actual physical time with the children was the equivalent of a "restriction" and, thus, required a specific finding that the original visitation arrangement would endanger the children's physical health or impair their emotional development.

In rendering its decision, the court stated that modification of visitation was in the best interests of the children and was necessary to provide them stability. The court continued:

> The Court is somewhat concerned to hear that one night [the children] may be at one parent's house, one night they are at the other parent's house during the school year. This Court's belief is that at least that stability during the school year is very important and encourages children to perform better in school.

\* \* \* \*

> There will not be any overnight visitation on Wednesday. However, the Court believes that this alternating pattern where Petitioner would get every other weekend Friday through Sunday and then the other alternative weekend, again, Friday evenings through Saturday. I think it provides meaningful contact. Clearly both parents are very important to these children's lives, and we wish to encourage that.

\* \* \* \*

With respect to the summer schedule, ... the Petitioner should have six consecutive weeks in the summer with the minor children....

The Court is ever mindful that in changes of visitation, it should attempt in all regards to give as much visitation as possible, not to take away visitation. The original parenting plan in this case, I'm trying to think of the appropriate words, were a little unusual. I don't know if this was requested by the parties. I can't glean that from the record or why it ... was my predecessor's belief that at that time it would work for the children, certainly their ages were a little bit different. I don't think that it works with children going to school, though, and children certainly of this age.

\* \* \* \*

The Court is trying to balance ... the variations the parties have [implemented] with what the original Circuit Court Judge entered as far as parenting plan. It makes sure that I don't, for lack of a better word, short change Mrs. Jarrett on time.

\* \* \* \*

It is evident from the court's statements: (1) that the court was somewhat confused by the original parenting schedule and sought to correct that problem; (2) that the court sought to compensate Mother for any time that she may have lost on a weekly basis by increasing her other parenting time; (3) that the court sought to do what was in the children's best interests without "short changing" either parent; and (4) that the court fashioned the

parenting plan to "encourage meaningful contact" with both parents. The court, also, obviously intended that the parents spend substantially the same amount of time with the children as they had been spending under their modified plan with the exception of the overnight stay on Wednesday, which the court found to be detrimental to the children's school performance.

Section 452.400.2,[4] which governs the modification of visitation rights, allows the trial court to modify an original order granting or denying visitation rights whenever modification would serve the best interests of the child. The court may not, however "restrict" a parent's visitation rights without first finding that the original visitation terms would endanger the child's physical health or impair his emotional development. § 452.400.2.

Mother points out that a significant reduction in visitation time can be tantamount to a "restriction," citing *Turley v. Turley*, 5 S.W.3d 162, 165 (Mo. banc 1999) (the denial of all overnight visitation amounted to a restriction since father could not practically take the children to his home nor outside the city limits), and *Loebner v. Loebner*, 71 S.W.3d 248, 258 (Mo.App.2002) (the reduction of total visitation time for father of approximately seventeen hours per two weeks required a finding that the original terms endangered the children's health or impaired their emotional development).

Mother makes much of the fact that at one point (under the parties' original improvised arrangement) she had ninety-six hours of visitation one week and seventy-two hours the next and that, now, her time under the modified parenting plan was

4. All statutory references are to Revised Statutes of Missouri, 2000, unless otherwise not- ed.

reduced to fifty-one hours one week and forty-five the next. She contends that such time reductions amount to a "restriction" of her visitation and, therefore, required the specific findings by the court. Mother does not address the trial court's attempt to rectify any weekly inequity in time by significantly increasing her parenting time in the summer and adding provisions for sharing holidays.

■ The Missouri Supreme Court explained in *Turley* that "[a] modification of visitation does not itself rise to a restriction or limitation. For sec. 452.400.2 to apply, the modification must restrict or limit one party's visitation rights compared to [that party's] visitation rights under the original agreement." *Searcy*, 85 S.W.3d at 102 (*quoting Turley*, 5 S.W.3d at 165).

The precise boundaries of the legislative objective in limiting the court's ability to "restrict" visitation under section 452.400.2 are less than obvious. In any event, whatever the concept of "restriction" includes, it is clear that the provision does not apply here. First, the modified visitation terms are *not* a reduction from the time allotted her in the original dissolution decree. Under the original decree, Mother had the children every other week from 9:00 a.m. Saturday until 8:00 a.m. Monday; one-half of Christmas break and spring break; and three weeks during the summer. She now has the children every other week from 5:30 p.m. Friday until 6:00 p.m. Sunday; every Wednesday evening from 5:30 p.m. to 8:30 p.m.; and every Friday evening 5:30 p.m. to noon on Saturday when she does not have weekend visitation. Her time with the children in the summer has been expanded to six consecutive weeks, her time with the children over Christmas break and spring break has remained the same, and an equitable holiday schedule has been added.

Second, the modified visitation terms do not vary significantly from the parties' prior or improvised arrangement. The exception is the Wednesday overnight stay with Mother, which the court pointedly found was interfering with the children's performance at school and which the court compensated for by increasing other visitation periods.

The court explicitly fashioned the visitation terms to serve the best interests of the children—as required under the statute—by encouraging meaningful contact with both parents, while endeavoring to be fair and equitable to the parties. We do not find that the modifications to Mother's visitation time amount to a "restriction" requiring a finding that the original terms "endangered the health" of the children or "impaired their emotional development." There is no trial court error. Point denied.

### Point II: Error in Awarding Child Support

Mother's second point proposes that if this court determines that the trial court erred in modifying the original visitation provisions, then this court must find that the trial court's child support order also is erroneous. In other words, if the prior parenting schedule is restored, then the award of child support is inappropriate since the parties would have the children for essentially equal amounts of time. Point II is contingent on this court reversing as to Point I. Because we affirm the court's judgment with regard to visitation, it is not necessary to address this argument. Point denied.

### Point III: Error in Form 14 Calculation—Emancipated Child

■ In her final point, Mother argues that the trial court misapplied the law in

crediting Father for his support obligation to his twenty-year-old daughter in its Form 14 calculation, in that the daughter became emancipated when she failed to enroll in college the fall semester after she graduated from high school.

Line 2(c) of Form 14 provides for an adjustment to gross income for "other children in the parent's primary physical custody."[5] The court, in its Form 14 calculation, credited Father $611.00 for his support obligation to his daughter, which effectively increased Mother's child support obligation by approximately $51.00 a month. Mother argues that the court should not have considered the daughter to be in Father's "primary physical custody" because she is emancipated.

"Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child." § 452.370.4. Pursuant to Section 452.340, for purposes of terminating child support, a child is considered to be emancipated once she turns eighteen if she is not enrolled in an institution of vocational or higher education by October 1 immediately following high school graduation.[6] The October 1 deadline may be waived by the court "[i]f the circumstances of the child manifestly dictate[.]" § 452.340.5.

Mother implies by her argument that a child who does not meet these statutory requirements is automatically emancipated by operation of law. Mother points out that there was no evidence to support a finding that the daughter's circumstances manifestly dictated a waiver of the October 1 deadline. The only testimony with regard to this specific issue was Father's statement that the daughter "took a year off" and his counsel's non-testimonial interjection that the break was necessary for economic reasons.

Mother, by raising the issue, had the burden of proving emancipation. *See Dowell v. Dowell,* 73 S.W.3d 709, 712 (Mo. App.2002). Mother's counsel addressed this issue at trial:

[Mother's counsel]: ... [In] Mr. Douglas' Form 14, [he's] put in there an adjustment for this young lady, and I believe in testimony from her father was that she didn't go to college after the October following her high school graduation, and I would submit that that is an emancipation factor that would then

<hr />

5. The Form 14 Directions and Comments for Use state:

*Line 2c: Adjustment to gross income for other children in primary physical custody*
DIRECTION: Enter the monthly amount of the support obligation of the parent for any children in his or her primary physical custody and not the subject of this proceeding.

The amount of the adjustment is the amount in the schedule of basic child support obligations that represents that parent's support obligation based only on that parent's gross income and without any adjustment for other children for whom that parent is responsible.

6. Section 452.340 provides in pertinent part:
3. Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child:

* * *

(5) Reaches age eighteen, *unless the provisions of subsection ... 5 of this section apply* ....

* * *

5. .... If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school ... the parental support obligation shall continue [past the age of 18].... If the circumstances of the child manifestly dictate, the court may waive the October first deadline for enrollment....

(Emphasis added.)

take her out of that as an adjustment. . . .

THE COURT: Has any court emancipated her?

[Mother's counsel]: No, but I think as simply operative—

[Father's counsel]: If we get into that, it had to do with she had to drop out because of an economic standpoint and all that, so—

THE COURT: I appreciate that. I will note for the record that certainly with the case law, it's fair to say is all over the ballpark on this issue, but certainly courts have indicated that if the child drops out of school then reconvenes again in school and no emancipation by the Court, that the obligation may still exist. And that has been a widely litigated issue, which Judge Campbell, of this circuit, seems to be in for following of such cases.

\* \* \* \*

THE COURT: It depends on why [they dropped out]. There is a line of cases that say if there is an economic situation and if you're out not going to school because you're working to make money to go to school, that that may be a grounds that doesn't constitute emancipation.

\* \* \* \*

Mother failed to present additional evidence of emancipation in an effort to show that an emancipation occurred. Here, Father's obligation to continue to support his twenty-year-old daughter has not been contested by either her custodial or noncustodial parent. No court has ruled that the child is emancipated by operation of law or otherwise. In view of the sketchy evidence presented here, the court could not determine that it was required, for purposes of this case, to regard the daughter as emancipated. We find no error in the ruling that Father was entitled to credit in the Form 14 calculation.

Mother also briefly argues under this point that the court erred in dividing the children's other expenses equally between the parties, rather than basing it on the parties' respective income percentages. Although Mother did not include this argument in her point relied on (in violation of Rule 84.04(e)), we have considered the argument, and find that it has no merit. Mother does not make a persuasive argument that the court abused its discretion in this regard. We find no abuse of discretion in this provision of the judgment.

Point denied.

### Conclusion

For the foregoing reasons, the judgment is affirmed.

HOWARD and LOWENSTEIN, JJ., concur.