In the Estate of Leigh Ann GANTT, Florine Gantt, Individually & Administrator, Appellant,

v.

Theodore BALDWIN, M.D., Respondent.

No. WD 51296.

Missouri Court of Appeals, Western District.

Sept. 3, 1996.

Anita Porte Robb, Kansas City, for appellant.

Richard Simpson, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

PER CURIAM:

Leigh Ann Gantt died on March 10, 1993 as a result of a pulmonary embolism. Her mother, Florine Gantt, filed suit against Dr. Theodore Baldwin alleging that Leigh Ann Gantt's death was the direct and proximate result of his negligence. Dr. Baldwin prevailed at trial. Appellant contends that the trial court erred in failing to exclude the testimony of Harry J. Bonnell, M.D., as an expert witness. The judgment of the trial court is affirmed.

Leigh Ann Gantt went to see Dr. Theodore Baldwin on March 9, 1993. Ms. Gantt was complaining of difficulty in breathing and chest pains. A chest x-ray was taken and read as normal. Dr. Baldwin detected an aortic valve murmur and set up a consultation with a cardiologist. The following day, Ms. Gantt called Dr. Baldwin and told him that she had fainted after running up the steps at work. He told her to come in and, once again, he examined her. Dr. Baldwin detected a bruit over her thyroid, a symptom of hyperthyroidism. Other symptoms were also consistent with a diagnosis of hyperthyroidism. Ms. Gantt went home and went to bed. When Ms. Gantt's mother returned home from work at 5:00 p.m., she found Ms. Gantt curled up in a ball and saying that she was dying. An ambulance was called and Ms. Gantt was taken to the hospital where she died a short time later. The cause of death was determined to be a pulmonary embolism.

On November 24, 1993, Florine Gantt filed suit against Dr. Baldwin for wrongful death and simultaneously submitted her first set of interrogatories. Dr. Baldwin's answer to the interrogatories, received by the plaintiff on January 7, 1994, stated that his expert witnesses were unknown. Trial was set for February 21, 1995. One of the witnesses identified by the plaintiff as an expert was Dr. Bonita J. Peterson. Dr. Peterson performed an autopsy on the body of Leigh Ann Gantt on April 28, 1993, after it was exhumed and took tissue samples from the body.

On January 18, 1995, plaintiff's counsel wrote to defendant's counsel and asked that any defense experts be identified. Defense counsel replied, naming Dr. Robert Rogers and Dr. William Fish as experts on the issue of standard of care. Counsel also wrote, "I have also consulted a forensic pathologist but at this time I do not know that there is anything for the pathologist to review." The defense was attempting to get tissue samples from Dr. Peterson at this same time. The record reflects that the defense did not obtain the requested samples until February 13, 1995. Indeed, it appears that Dr. Peterson did not prepare for her review of the samples until February 6, 1995, about two weeks before trial and nearly two years after the autopsy. On January 30, 1995, three weeks before trial, defense counsel wrote to plaintiff's counsel, stating:

As I set forth earlier in my designation of experts, I would use a pathologist in this case depending upon the information that I get from your office regarding the tissue and slides your expert has assembled. I have still not heard anything on that issue, but since it is Monday and you did request that I identify any experts I might call by this date, I want to let you know that I have spoken with and would use as an expert in this case, Dr. Harry J. Bonnell,

Chief Deputy Medical Examiner, San Diego, California.

My decision to use Dr. Bonnell will hinge somewhat upon the materials that you are able to produce for me. Again, I would ask that you let me know right away whether there is any tissue or slides for Dr. Bonnell to review.

Plaintiff filed a motion to strike the testimony of Dr. Baldwin's experts. The court held a hearing on February 9, 1995. At the hearing he at first indicated that he did not "think it's appropriate under the circumstances for [Dr. Bonnell] to be called or offered on the very eve of trial for a deposition as an expert ... I'm going to make a finding that that's just too late under all the cases that are cited by both of you...." However, Dr. Peterson's deposition had not yet been taken and thus defendant was not yet sure whether he would need to call Dr. Bonnell in rebuttal of her testimony. The court thus concluded that it was premature to rule on the admissibility of Dr. Bonnell's testimony. He said that he would take the matter of calling Dr. Bonnell under advisement, stating: "I'm not going to have to make an order because at this time I don't think it's appropriate but in the event defense counsel offers him as a witness and thinks that he should be, I'll rule on it at that time."

On February 14, the defense filed a motion asking the court to reconsider and outlining the additional work done by Dr. Peterson in regard to the samples, and the problems the defense was having in getting the samples from Dr. Peterson. The defense asked for a continuance, or for a prohibition against Dr. Peterson's testimony as to the timing of the blood clot.

The opinions of Dr. Peterson and Dr. Bonnell were significant on the issue of the age of the blood clots appearing in Ms. Gantt's lungs. Dr. Peterson, testifying on behalf of the plaintiff, opined that some of the blood clots found in the lungs of the deceased had formed within an hour or two of death. The plaintiff argued that this is significant because, if true, then these clots were not present at the time that Ms. Gantt went to see Dr. Baldwin and might have been prevented by medication. Dr. Bonnell, on the other hand, testified that the clots he examined appeared to be from four to six days old, and had been in Ms. Gantt's lung for more than a day before Dr. Baldwin's examination. The defense argued this was significant because treatment at the time Dr. Baldwin examined Ms. Gantt would not have saved Ms. Gantt's life.

On February 21, 1995, the day of trial, the trial court heard both sides on the matter of Dr. Bonnell's testimony. The trial court decided to allow Dr. Bonnell to testify, stating:

The facts are Dr. Peterson did a physical examination of the evidence in her possession as late as mid-February of 1995 and has come up with an additional opinion which is a key part of the plaintiff's case and I believe an issue that the defendants should have a right to rebut.

As a result, it's no longer under advisement. I'm going to rule that the defense counsel will have a right to use Dr. Bonnell as an expert witness, as a rebuttal witness assuming Dr. Peterson testifies as plaintiff's counsel has indicated she is going to testify. In that respect, I believe that they should have a right to bring him in since he's already looked at the slides. He has an opinion. Defense counsel indicated that opinion will not only be made available in writing but can be expressed in a deposition in advance of his testimony. So I believe that for that purpose he should have a right to offer that rebuttal testimony.

Plaintiff's counsel asked whether the judge would admit Dr. Bonnell's testimony only if plaintiff brought out Dr. Peterson's views on the tissue samples during her examination. The court indicated that he would permit Dr. Bonnell to testify in any event, because Dr. Peterson had already brought out the issue of the age of the clots in detail in her deposition, and had formed a new opinion as to it. This made a new viable issue for the defen-

dant to address, and that could not be negated merely by failing to address the issue on direct examination of Dr. Peterson.

However, in light of the potential importance of this testimony and of the recent nature of the raising of this issue, the judge offered plaintiff a continuance so that she could better prepare to meet the testimony of Dr. Bonnell, stating: "Do you want to proceed to trial in this matter realizing that I'm going to permit Dr. Bonnell to testify?" Plaintiff's counsel announced that she was ready for trial and requested an opportunity to take a discovery deposition from Dr. Bonnell. Dr. Bonnell's deposition was taken on February 23, 1995. He testified without further objection the following day. At the conclusion of the evidence, the jury returned a verdict in favor of Dr. Baldwin.

In her sole point, appellant contends that the trial court erred in failing to strike Dr. Bonnell as a witness because: Dr. Bonnell was never identified as an expert pursuant to Rule 56.01(e); the court had ruled that it was too late to identify new witnesses and plaintiff detrimentally relied upon that; the trial court's decision was highly prejudicial to plaintiff; the defendant had two other expert witnesses and the striking of Dr. Bonnell would not have destroyed the defendant's case; and the option of a continuance was not a fair remedy.

 We cannot agree that the trial judge abused his discretion in permitting Dr. Bonnell to testify in the context of this case. Counsel was not entitled to rely on the court's pretrial ruling in which he indicated that he was inclined to disallow Dr. Bonnell's testimony. First, the court made it clear that it was taking the matter under advisement, and its ruling was not final. Second, a ruling on a motion in limine is never final. The court is always free to change its ruling when the issue comes up in the context of the

trial. *Carlund Corp. v. Crown Center Redevelopment Corp.*, 910 S.W.2d 273, 276 (Mo. App.1995). Thus, plaintiff had no right to rely on the judge's pre-trial indication of what he thought hypothetically might be his ruling.

In fact, this case presents a good example of the reason why the ruling on a motion in limine is always considered interlocutory. By the day of trial, the court found that the factual context for Dr. Bonnell's testimony had changed. In the interim, plaintiff's expert had made slides of the clots and offered new opinions as to the age of the clots. These new opinions went to the very heart of the case. Moreover, defense counsel had specifically indicated in his January 30 letter that he would want to call Dr. Bonnell if this very situation arose—Dr. Peterson had slides and had opinions based on them.

Further, in order to avoid prejudice to plaintiff, the judge offered plaintiff a continuance so that she would have more time in which to depose Dr. Bonnell and prepare for his testimony. Because of the expense of again preparing for trial on a future date, plaintiff chose not to take the offered option of a continuance. Instead, when the judge asked whether she wanted to proceed to trial in this matter realizing that he would permit Dr. Bonnell to testify, she announced that she was ready for trial and requested the opportunity to take a discovery deposition of Dr. Bonnell. She did so on the evening before he testified.[1]

 In this context, we find no prejudicial error in the trial court's ruling. We note that trial courts are vested with broad discretion in their administration of the rules of discovery. *Curnutt v. Scott Melvin Transp., Inc.*, 903 S.W.2d 184, 193 (Mo.App.1995). In unusual cases, that discretion has even extended to the point of allowing the examination of a witness whose name, though requested, was not disclosed, where there was an opportunity for an overnight deposition. *Dane By Dane v. Cozean*, 636 S.W.2d 87, 90 (Mo.App.1982). In *State ex rel. Webster v.*

---

1. Because we decide that the trial court did not abuse its discretion in permitting Dr. Bonnell to testify, we need not reach the issue whether plaintiff adequately preserved this issue where, as here, she did not object at the time Dr. Bonnell actually testified, but she did obtain a ruling

on the issue at the beginning of trial and the judge indicated at that time that his ruling was final and that he would not change his ruling even if she did not ask Dr. Peterson about the blood clot slides during her testimony.

*Lehndorff Geneva, Inc.,* 744 S.W.2d 801, 804 (Mo. banc 1988), the court observed:

> Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

Applying these principles here, we find that the trial judge carefully considered the reasons in favor of allowing Dr. Bonnell to testify, as well as the potential prejudice which might arise from his testimony. We also find that Plaintiff had been aware since the end of January that Dr. Bonnell might be called as a witness, and the decision to do so was based in part on the testimony offered by her own expert shortly before trial. While this left plaintiff in a difficult position, she made the reasonable strategic decision not to accept this offer of a continuance and instead to proceed to trial. Moreover, the record shows that she obtained the opportunity to depose Dr. Bonnell and then ably cross-examined him at trial. In this circumstance, we cannot find an abuse of discretion.

The judgment of the trial court is affirmed.