**Robbie Arthur ALBERSWERTH, Respondent,**

v.

**Teresa Leann ALBERSWERTH, Appellant.**

No. WD 65322.

Missouri Court of Appeals, Western District.

Jan. 24, 2006.

Weldon W. Perry, Jr., Lexington, MO, for Appellant.

Wanda A. Hansbrough, Parkville, MO, for Respondent.

Before ROBERT G. ULRICH, P.J., PATRICIA A. BRECKENRIDGE and JAMES M. SMART, JJ.

ROBERT G. ULRICH, Presiding Judge.

Teresa Alberswerth appeals the Lafayette County Circuit Court's Judgment of Modification, which modified a Judgment Decree of Dissolution of Marriage. Ms. Alberswerth presents four points on appeal. First, she claims the modification judgment does not contain sufficient written findings with regard to the modification of child custody. Second, she claims the trial court's award of sole physical

custody of the two minor children, born to the parties during their marriage, to Mr. Alberswerth was not supported by substantial evidence and was against the weight of the evidence. Third, she claims the trial court erred in assessing attorney's fees and Guardian Ad Litem fees against her. Finally, she claims the trial court erred in allowing certain documents to be admitted during trial. Ms. Alberswerth's first point and third point, with respect to attorney's fees, are granted and the judgment is reversed and remanded. Her second point is not reached, and her third point, with respect to Guardian Ad Litem fees, and fourth point are denied.

## Facts

Robbie and Teresa Alberswerth were married on April 20, 1985. They had two sons during the marriage; Chance Alberswerth was born December 31, 1990, and Trace Alberswerth was born October 7, 1993. The marriage was dissolved on October 25, 2002.

Ms. Alberswerth is a schoolteacher and Mr. Alberswerth owns and operates a brickyard. They live approximately two blocks from one another and from the children's school. Trace Alberswerth has been diagnosed as having Attention Deficit Disorder with Oppositional Defiance Disorder. He has been and continues to be under the care of both a psychiatrist and a psychologist and takes medication to treat his behavioral issues.

■ In the Judgment Decree of Dissolution of Marriage, the trial court awarded no child support to either party, awarded Mr. Alberswerth sole legal custody of the children, and designated Mr. Alberswerth the primary residential parent for the two children.[1] Ms. Alberswerth was awarded parenting time with the two children from 3:00 p.m. to 6:00 p.m. on weekdays during the school year. Ms. Alberswerth also was awarded parenting time with the children overnight on Thursdays. Mr. Alberswerth was awarded parenting time with the children the remainder of the time during the week. The children alternated weekends between Mr. and Ms. Alberswerth. The Judgment further decreed that Mr. Alberswerth was to call Ms. Alberswerth every Sunday at 7:00 p.m. to review their calendars and their sons' activities for the upcoming week.

The physical custody schedule during the summer was as follows: During the week, Mr. Alberswerth had parenting time with the children from 6:00 p.m. to 9:00 p.m. and Ms. Alberswerth had parenting time with the children the remainder of the time. The weekend physical custody schedule was the same as during the school year, with the children alternating weekends between Mr. and Ms. Alberswerth. The Judgment additionally provided for physical custody arrangements for holidays and birthdays and made other provisions consistent with a comprehensive parenting plan.

The Judgment also contained a right of first refusal, which read as follows:

Each party shall grant to the other a "right of first refusal" for parenting time with regard to care of the minor children. Said right of first refusal would

---

1. Neither primary residential custody nor primary physical custody are "among the four types of custody dispositions recognized by § 452.375.5, which are: (1) joint physical custody; (2) sole physical custody; (3) third-party custody; and (4) visitation." *In re Marriage of Swallows,* 172 S.W.3d 912, 913 n. 1 (Mo.App. S.D.2005). Given that the children's time was divided fairly evenly between Mr. and Ms. Alberswerth, the trial court appears to have awarded each party joint physical custody. Both parties agree with this characterization.

"vest" if the children are to be outside the custody of the parent with the children for two hours or more.

Further, the Judgment contained a provision stating that the parents had the right to alter, modify, and otherwise arrange for specific custody periods on terms and conditions conducive to the best interests and welfare of the children.

On November 7, 2003, Ms. Alberswerth filed a Motion to Modify Judgment of Dissolution of Marriage alleging that the circumstances of her sons and Mr. Alberswerth had changed substantially and on a continuing basis such that the children's best interest required modification of custody, visitation, and support as set forth in the Judgment of Dissolution. Ms. Alberswerth alleged, *inter alia,* that Mr. Alberswerth behaved inappropriately toward or in the presence of Trace Alberswerth and that he refused to offer her the right of first refusal set forth in the dissolution judgment. She prayed for legal and physical custody of the children, child support, attorney's fees, and costs.

Because of the allegations of abuse or neglect, the court appointed a Guardian Ad Litem. In her proposed parenting plan, filed with the court on January 16, 2004, Ms. Alberswerth sought joint legal custody and primary physical custody,[2] with Mr. Alberswerth having visitation one weekday per week from 3:00 p.m. to 9:00 p.m., every other weekend, and six weeks during the summer.

On June 8, 2004, trial was scheduled for September 17, 2004. On September 1, 2004, Ms. Alberswerth received notification that Mr. Alberswerth would call Dr. Kevin Mays at trial as an expert witness and that

his deposition was scheduled for September 8, 2004. Dr. Mays was Trace Alberswerth's treating psychologist. On September 2, 2004, the next day, Ms. Alberswerth filed several relevant motions with the trial court; these were a Motion to Strike Expert Witness Opinion and Testimony, a Motion to Quash Depositional Notices, and a Motion in Limine. The trial court conditionally granted the Motion to Strike Expert Witness Opinion and Testimony, granted the Motion to Quash Depositional Notices, and denied the Motion in Limine.

Trial was had on September 17, 2004. During trial, a redacted letter written by Dr. Mays was admitted into evidence, pursuant to a pretrial stipulation. Certain medical records of Dr. Mays were also admitted, over Ms. Alberswerth's objections.

On October 18, 2004, the trial court rendered its Judgment of Modification. The court found that modification was required because "since the dissolution of the marriage, the parties have interacted in a manner which is not in the best interest of the minor children." The trial court also found that Ms. Alberswerth "has demonstrated an inability to properly care for and handle Trace Alberswerth's needs." Finally, the trial court found that "the best interest of the minor children warrants and demands a modification of the original judgment to reduce the interaction of parties around and including the minor children."

 The trial court left Mr. Alberswerth's sole legal custody of the children unchanged but modified the physical custody arrangement.[3] During the school year,

---

2. As noted, primary physical custody is not among the four custody dispositions recognized by section 452.375.5.

3. Neither the original judgment nor the modification judgment explicitly state what form of physical custody is awarded to Mr. and Ms. Alberswerth. In the original judgment, as noted in footnote 1, the court awarded Mr.

Ms. Alberswerth was awarded parenting time with the children from 3:00 p.m. on Thursdays until 3:00 p.m. on Fridays and every other weekend. During the summer, Mr. and Ms. Alberswerth were awarded parenting time with the children in alternating two-week periods, with the parent not currently with custody having custody of the children over the interim weekend of the two-week period. The right of first refusal was changed to go into effect when the child or children are to be outside the custody of a parent for more than eight hours, as opposed to two hours as set forth in the original dissolution judgment.

The trial court also awarded the Guardian Ad Litem her fee of $5,175.00 and ordered Ms. Alberswerth to pay the full amount. Mr. Alberswerth was additionally awarded his attorney's fees in the amount of $7,837.00. The remainder of the Judgment remained unchanged or is of no interest in this matter.

## Point I

■ In her first point on appeal, Ms. Alberswerth argues that the modification judgment does not contain the required detailed written findings of relevant statutory factors relied upon in modifying the Alberswerth sole legal custody and primary residential custody, but otherwise merely set forth each party's parenting time with the children. Both parties agree that the original judgment awarded them joint physical custody and the details of the arrangement are consonant with that interpretation. Section 452.375.1(3) defines joint physical custody as an arrangement where each parent is awarded "significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervisions of each of the parents." The original judgment awarded both Mr. and Ms. Alberswerth significant periods of time with the children, an arrangement consistent with the definition of joint physical custody.

The modification judgment also fails to explicitly state whether the trial court modified the judgment to award: (1) Mr. and Ms. Alberswerth joint physical custody with different allocations of parenting time or (2) Mr. Alberswerth sole physical custody. The modification judgment, again, merely sets forth each party's parenting time with the children. Both Mr. and Ms. Alberswerth label the modified arrangement an award of sole physical custody to Mr. Alberswerth. The fact that the trial court used the term "parenting time" rather than "visitation" may indicate an intention to order joint custody.

The term sole physical custody is not defined by section 452.375.1. "Given the definition of joint physical custody, however, sole physical custody would logically encompass custodial arrangements in which one of the parents is not awarded significant periods of custodial time." *Timmerman v. Timmerman,* 139 S.W.3d 230, 234 (Mo.App. W.D.2004)(quotation marks omitted). If a parent is awarded sole physical custody, the other parent is awarded visitation; if both parents have joint physical custody, neither parent is awarded visitation. *Id.* "What constitutes significant periods of custodial time for purposes of joint physical custody is not defined but left for the trial court's determination." *Id.*

Whether the court awarded sole or physical custody does not impact the analysis in this opinion, but it has significant ramifications for the future. If the custodial arrangement is designated as one of joint physical custody, a parent must show a change in circumstances and that modification is in the child's best interests before a modification of parenting time may be allowed; if the custodial arrangement is designated as one where one parent has sole physical custody and the other parent has visitation, the visitation arrangement may be modified upon only showing that the modification is in the child's best interests. *Id.* at 236.

As it is clear that the original award was one of joint physical custody, there is no uncertainty regarding the standard for modification of that original award. Should either parent seek to modify the current award of custody, the trial court will have to determine which modification standard is proper. That is not an issue this court must address at this time, however.

custody arrangement.[4] Ms. Alberswerth is correct. The trial court erred as a matter of law because it failed to make the required findings in compliance with section 452.375.6.

When reviewing a modification of child custody, the judgment of the trial court will be affirmed if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Speer v. Colon*, 155 S.W.3d 60, 61 (Mo. banc 2005). An appellate court defers to the trial court's superior ability to assess witness credibility and views all facts and reasonable inferences in a light most favorable to the trial court's decision. *Dunkle v. Dunkle*, 158 S.W.3d 823, 832–33 (Mo.App. E.D. 2005). A trial court has broad discretion with respect to custody issues and custody decisions are given greater deference than civil cases. *Id.* at 833. An appellate court presumes the trial court awarded custody in accordance with the children's best interest after a thorough review of the evidence and a trial court's judgment will be reversed only if the appellate court is firmly convinced that the welfare and best interests of the children require a different disposition. *Id.* Each case is reviewed in light of its own unique facts. *Huber ex rel. Boothe v. Huber*, 174 S.W.3d 712, 714 (Mo.App. W.D.2005).

"Determining custody and custodial arrangements of children in dissolution actions is one of the most important and most sensitive duties of the court." *Buchanan v. Buchanan*, 167 S.W.3d 698, 702 (Mo. banc 2005). Section 452.375[5] governs child custody. *Cerutti v. Cerutti*, 169 S.W.3d 113, 115 (Mo.App. W.D.2005); § 452.375. When awarding child custody, the trial court must determine the best interests of the child. *Cerutti*, 169 S.W.3d at 115; § 452.375.2. To determine what custody arrangement would be in the child's best interest, the trial court must consider the eight statutory factors listed in section 452.375.2[6] and the public policy

---

4. Effective January 1, 2005, Rule 78.07(c) requires that in "all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." This rule was not in effect at the time the modification judgment was issued.

5. All citations to section 452.375 are to § 452.375, RSMo Cum.Supp.2004.

6. The eight statutory factors found in section 452.375.2 are:
 (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
 (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
 (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
 (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
 (5) The child's adjustment to the child's home, school, and community;
 (6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;
 (7) The intention of either parent to relocate the principal residence of the child; and

statement set forth in 452.375.4.[7] *Cerutti*, 169 S.W.3d at 115; § 452.375.2, .4.

When child custody is contested, as it was in this case, written findings must be made in the judgment based on both the eight factors of subsection two and the public policy contained in subsection four. *Cerutti*, 169 S.W.3d at 115; § 452.375.6. Section 452.375.6 states in relevant part:

> If the parties have not agreed to a custodial arrangement ... the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section *detailing the specific relevant factors that made a particular arrangement in the best interest of the child.*

§ 452.375.6 (emphasis added). The Missouri Supreme Court made clear in *Speer* that section 452.375.6's dictate that the judgment must *detail* the specific relevant factors that made the chosen custody arrangement in the best interest of the child applies to all relevant factors listed in section 452.375.2 *and* the public policy statement. *Speer*, 155 S.W.3d at 62; § 452.375.6. In *Buchanan*, 167 S.W.3d at 702, the Missouri Supreme Court reiterated *Speer* and stated that, if custody is a contested issue, "written findings that include discussion of the applicable factors from section 452.375.2 are required." This written consideration of all pertinent factors is intended to allow a more meaningful appellate review. *Swallows*, 172 S.W.3d at 915.

The mandate for written findings is clear; what degree of specificity is required by a trial court in its written findings is not as clear. Section 452.375.6 uses the word "detail" and this word is repeated in the cases interpreting and applying this statute. The trial court must detail the relevant factors. "The trial court is not, however, required to do a complete 'laundry list' of the statutory factors under section 452.375.2(1)-(8). Instead, it must only address in detail those factors that it considered particularly relevant to its custody determination." *Dunkle*, 158 S.W.3d at 833 (internal citations and quotation marks omitted). Prior cases examining the sufficiency of written findings are helpful.

In *Tipton v. Joseph–Tipton*, 173 S.W.3d 692 (Mo.App. W.D.2005), the trial court did not make any findings concerning the eight section 452.375.2 factors or the public policy statement found in section 452.375.4. *Id.* at 694. The judgment merely quoted the public policy statement and declared that joint legal and physical custody "in the best interests of the minor children." *Id.* This court reversed and remanded the judgment with directions for the trial court to make the statutorily required findings. *Id.*

---

(8) The wishes of a child as to the child's custodian.

7. Section 452.375.4 states:

 The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

In *Cerutti*, 169 S.W.3d at 115, the only finding in the judgment regarding child custody was that the mother was the proper person to have custody and control of the minor child. This court held that the judgment did not address the public policy or the eight statutory factors of 452.375 and reversed the judgment. *Id.*

In *In re Marriage of Swallows*, 172 S.W.3d at 914, the trial court made the following findings:

> Now, the Court, being fully advised in the premises, finds from the evidence that there has been such continuing and substantial change of circumstances which would require modification of the judgment, to-wit: [Father] is regularly employed, has a stable and safe home environment and supervised visitation with the minor child is no longer required. The Court also finds that [Mother], who by her own admission believes that a child of this age "belongs with the mother" has, without good cause, consistently refused to promote an ongoing and continuing relationship with the minor child and [Father].

The father argued that the judgment met the statutory requirements, despite the fact that it did not explicitly contain the statutory findings. *Id.* at 915. He contended that the judgment's contents reflected that the trial court considered relevant factors that corresponded to those enumerated in section 452.375.2(2), (3), and (4). *Id.* The Southern District stated that *Speer* and *Buchanan* "make it clear that § 452.375.6 requires written findings detailing the specific relevant factors that made the chosen arrangement in the best interests of the child." *Id.* at 916. The court noted that a finding was not made that the chosen arrangement was in the child's best interests and that the judgment "failed to detail the specific relevant factors that [the trial court] concluded

would make this arrangement in [the child's] best interest." *Id.* The appellate court reversed and remanded the judgment. *Id.*

In *Fortner v. Fortner*, 166 S.W.3d 615, 622 (Mo.App. W.D.2005), this court reversed a judgment for failure to make sufficient findings. This court noted that, while a trial court need not mechanically discuss all eight factors listed in section 452.375.2, it must discuss the relevant factors in such a manner that meaningful appellate review is possible. *Id.* This court further noted that the judgment at issue did not reference section 452.375, indirectly discussed just two of the eight factors, and failed to discuss the fourth factor, which is the public policy of frequent, continuing, and meaningful contact with the parents. *Id.*

In *Erickson v. Blackburn*, 169 S.W.3d 69 (Mo.App. S.D.2005), the trial court's judgment was deemed to have complied with the statutory mandate to make written findings. The appellate court noted that, while the findings did "not track the order or verbiage of the factors listed in the statute, the court's findings of fact clearly show that the judge made written findings on, at a minimum, five of the eight statutory factors." *Id.* at 75. The Southern District observed:

> The court made findings on the following facts. It concluded that the child has bonded with her half-brother and "with children her own age" (Factor # 3). Appellant is the party who chooses not to communicate with Respondent regarding matters involving the child, which creates a negative impact on the child and "directly impairs the ability of the child to enjoy a nurturing, loving relationship with both parents" (Factor # 4). [The child] has improved in school and has adjusted well to life with Respondent and his wife, who have provid-

ed her with a suitable home (Factor # 5). Respondent has provided [the child] with adequate medical and dental care, while Appellant has engaged in conduct that is harmful to the child, including repeatedly trying to get the child to express an opinion regarding with whom she would like to live, causing the child additional stress (Factor # 6). And finally, although it is possible that Respondent could be deployed to Afghanistan, such is not certain, and it would be speculative to assume that his deployment is imminent (Factor # 7). *Id.* The appellate court concluded that the trial court's findings complied with section 452.375.6 in that findings were made on the relevant factors listed in section 452.375.2. *Id.* at 76.

In the modification judgment rendered by the trial court in this case, the trial court made the following relevant findings:

3. This Court finds that since the dissolution of marriage, the parties have interacted in a manner which is not in the best interest of the minor children thus requiring modification of the Parenting Plan entered at the time of the dissolution of the parties' marriage.

4. This Court further finds that Respondent Teresa Alberswerth has demonstrated an inability to properly care for and handle Trace Alberswerth's needs.

5. This Court finds, as demonstrated by the evidence presented in the trial of this case which caused the pleadings to be modified to conform to the evidence, the best interest of the minor children warrants and demands a modification of the original judgment to reduce the in-

teraction of parties around and including the minor children.

Ms. Alberswerth argues that these findings fail to comply with section 452.375.[8] She contends that neither the eight statutory factors nor the public policy statement are addressed in the written findings. Ms. Alberswerth's position is that the findings are inadequate in that they "do not identify, let alone 'detail' any of the actual facts and circumstances from the evidence the Court relied on in reaching a conclusion on the custody issue." She also notes that there is no explicit reference to Chance Alberswerth. She claims that caselaw and the statutory mandate require more detailed findings be rendered in a case where child custody is contested.

Mr. Alberswerth argues that the third and fifth findings sufficiently address the public policy statement regarding the best interest of the child. He further claims that factors (1), (3), (5), (7), and (8) are irrelevant and that the remaining factors ((2), (4), and (6)) are addressed. Thus, he contends that the written findings comply with the statutory mandate.

The trial court's findings fail to comply with section 452.375.6 and do not allow for meaningful appellate review. The third finding merely indicates that the original custody arrangement needed to be modified. The fifth finding indicates that it is in the children's best interests that Mr. and Ms. Alberswerth do not have to interact frequently. Neither of these findings indicates that it is in the children's best interest for sole physical or legal custody to be awarded to Mr. Alberswerth as opposed to Ms. Alberswerth. These two findings could support awarding sole cus-

---

8. She notes that she brought this to the court's attention in a timely post-trial motion. She further notes that Mr. Alberswerth addressed the potential problem of inadequate findings in his post-trial motion asking the court to correct clerical errors. Instead of amending the judgment to include additional findings, the trial court left the modification judgment unaltered.

tody to either party as long as the original arrangement was modified and Mr. and Ms. Alberswerth were not required to frequently interact. As for the fourth finding, this supports awarding Mr. Alberswerth custody of Trace Alberswerth, but it does not address Chance Alberswerth in any way.

Contrary to Mr. Alberswerth's protestations, the trial court's findings are insufficient. This court fails to see how the findings "detail" any of the factors. As discussed, *supra*, the trial court need not discuss every factor and it is not necessary to explicitly list each factor and then make a finding Consideration of the factors may be implied from the findings, but this court cannot imply what is simply not there.

The point is granted.

## Point II

In her second point on appeal, Ms. Alberswerth argues that the award of sole physical custody of the children to Mr. Alberswerth was not supported by substantial evidence and was against the weight of the evidence. As discussed, *supra*, the modification judgment does not contain the required detailed written findings of relevant statutory factors relied upon in modifying the custody arrangement. This court is unable to evaluate whether the award of sole physical custody was supported by substantial evidence without these written findings; therefore, this point cannot be addressed at this time.

## Point III

In her third point on appeal, Ms. Alberswerth argues that the trial court erred in assessing the entire sum of the Guardian Ad Litem's $5,175 fee and $7,837 of Mr. Alberswerth's $16,500 attorney's fees against her. She claims the assessment of fees against her was an abuse of discretion because she commenced the modification proceedings to address legitimate issues involving the children's best interests and because the totality of evidence at trial indicates that the assessment of fees against her was improper.

As a general rule, parties to a domestic relations case are responsible for paying their own attorney's fees. *Barancik v. Meade*, 106 S.W.3d 582, 593 (Mo. App. W.D.2003). A trial court is permitted, although not required, to award attorney's fees under section 452.355.1.[9] *Id.* A trial court is given considerable discretion in awarding attorney's fees and an award of attorney's fees will be overturned only upon showing an abuse of discretion. *Aurich v. Aurich*, 110 S.W.3d 907, 916 (Mo. App. W.D.2003). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

When awarding attorney's fees, the trial court must comply with section 452.355. *Geary v. Geary*, 697 S.W.2d 318, 320 (Mo.App. E.D.1985). A trial court may award attorney's fees only after con-

9. All citations to section 452.355 are to § 452.355, RSMo 2000.

Section 452.355.1 states in relevant part:

Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the. pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

sidering all relevant factors, including the financial resources of both parties. *Barancik*, 106 S.W.3d at 594. The relevant factors will balance differently in each case. *Id.* "A court is always required to consider the financial resources of both parties before deciding a request for attorney fees. In the absence of evidence as to the parties' financial resources, an award of attorney fees cannot be supported." *Id.* (internal citations and quotation marks omitted); *see also Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979).

▆ Detailed or extensive information regarding the parties' financial resources is not required; information adduced from testimony as opposed to formal statements filed with the court is sufficient. *See, e.g., In re the Marriage of Hoskins*, 164 S.W.3d 188, 198 (Mo.App. S.D.2005)(affirming award of attorney's fees, despite the fact that father did not offer a Statement of Property and Debt into evidence, because there was testimony regarding the assets of both mother and father). While detailed formal information regarding the parties' financial resources is not necessary, evidence must have been presented from which the court can draw on in considering the relevant factors.

In *Barancik*, 106 S.W.3d at 594, a child custody modification action, the evidence of the financial resources of the parties was testimony to the effect that father had obtained free lawyer services and that mother was unemployed at the time of trial. This court stated: "Although present earnings are among the relevant factors to be considered in awarding attorney fees, a court must know what debt each party owes and what non-employment income each party has before it can determine either the need or ability to pay" and

reversed mother's award of attorney fees. *Id.*

In *Geary*, 697 S.W.2d at 321, the appellate court stated:

In most cases where the award of attorney's fees is an issue on appeal, the finances of the parties are before the court, either for purposes of distributing marital property or awarding maintenance or child support. Such matters were not at issue here, and the court knew only that father was a sales manager for an insurance company and leased a home in an upper middle class neighborhood, and that mother worked as a sales representative. This evidence as to the parties' financial resources was insufficient to support the award of attorney's fees.

The court reversed and remanded the judgment. *Id.*

This case is similar to *Geary* in that the finances of the parties were not before the court. This was a modification to a dissolution decree; the only disputed issue was child custody. In the original judgment, neither party was ordered to pay child support, and neither party sought child support in the modification action.[10] Because neither party sought child support, there was virtually no evidence of the parties' financial resources. At trial, Mr. Alberswerth submitted a Form 14, but clearly stated that he was not seeking child support, and the numbers listed on the Form 14 were not recited or questioned. The Form 14 submitted by Mr. Alberswerth states that the parent receiving support had a monthly income of $2,500 and the parent paying support had a monthly income of $2,978. It determined that the presumed child support amount was $508.

---

10. Ms. Alberswerth prayed for child support in her Motion to Modify Judgment of Dissolution of Marriage. This was not pursued at trial, however, as she did not submit a Form 14 for the court's review.

Other than the Form 14, the only evidence of the parties' financial resources was: testimony that Ms. Alberswerth was a schoolteacher and Mr. Alberswerth owned and operated a brickyard; Mr. Alberswerth's testimony that he was quickly becoming a poor man;[11] Mr. Alberswerth's testimony that his finances had been strained the last year; Mr. Alberswerth's testimony that he had to pay for the children's sporting equipment, insurance, and Trace's medication;[12] and testimony that Trace Alberswerth stated his mother took or was taking all of his father's money and that his father was poor.

Mr. Alberswerth's assertions on his Form 14 of what each party's income was is not sufficient information from which the court can consider the financial resources of both parties. Neither party's debt was reflected, nor were Mr. Alberswerth's numbers corroborated or challenged by Ms. Alberswerth, probably because both parties considered child support to be a non-issue. While the dissolution action may have contained a great deal of information pertaining to the parties' financial resources, that action occurred almost two years prior to the modification trial and the parties' situation could have changed. As information regarding the parties' financial re-

sources was not available to the trial court, the trial court could not have considered this factor, and any award of attorney's fees was improper.

On remand, if either party seeks attorney's fees, information pertaining to the parties' financial resources should be presented. Once it is in possession of this information, the trial court is instructed to consider it, as required by section 452.355. Only after considering the parties' financial resources, may the trial court make an award of attorney's fees.

 As for the Guardian Ad Litem fees, section 452.423.5[13] provides that the court may, in its discretion, award Guardian Ad Litem fees as a judgment. Section 452.423 does not require that the financial resources of both parties be considered before awarding Guardian Ad Litem fees. A trial court's award of Guardian Ad Litem fees will not be disturbed unless it was an abuse of discretion. *Prewitt v. Hunter,* 105 S.W.3d 874, 877 (Mo.App. E.D.2003). A trial court may consider the circumstances surrounding the appointment of a Guardian Ad Litem in determining how the Guardian Ad Litem's fees should be paid. *Stirling v. Maxwell,* 45 S.W.3d 914, 916 (Mo.App. W.D.2001).

11. Mr. Alberswerth states that considerable evidence was presented at trial that "Dad is poor." This is a gross exaggeration, and Mr. Alberswerth fails to cite any portion of the record in support of this assertion.

12. Mr. Alberswerth never indicated how much money he spent on these items.

13. All citations to section 452.423 are to § 452.423, RSMo Cum.Supp.2004.
Section 452.423.5 states:
 5. The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may:
 (1) Issue a direct payment order to the parties. If a party fails to comply with the

court's direct payment order, the court may find such party to be in contempt of court; or
 (2) Award such fees as a judgment to be paid by any party to the proceedings or from public funds. Such an award of guardian fees shall constitute a final judgment in favor of the guardian ad litem. Such final judgment shall be enforceable against the parties in accordance with chapter 513, RSMo.
Section 452.423.2 states:
 The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.

In the argument portion of her brief, Ms. Alberswerth seems to complain that the Guardian Ad Litem did not fully perform her duties. She complains that neither the Guardian Ad Litem's testimony nor the billing statement indicate that the Guardian Ad Litem visited Ms. Alberswerth's house to ascertain the quality of the living circumstances there. Ms. Alberswerth further states that the Guardian Ad Litem informed the court that she had consulted and interviewed the children's teachers and yet one of Trace's teachers testified that the Guardian Ad Litem had not contacted her. She also complains that the Guardian Ad Litem cross-examined her too thoroughly and did not cross-examine the other witnesses thoroughly enough.[14]

■■■■ Ms. Alberswerth's contention that the Guardian Ad Litem failed to fulfill her duties is raised for the first time in the argument section of her brief and is not raised in her point relied on. An appellate court need not consider issues raised in the argument portion of a brief that are not raised in the point relied on. *State v. Smith*, 157 S.W.3d 687, 690 n. 3 (Mo.App. W.D.2004). This claim is not considered.

■■■■ Ms. Alberswerth next claims that Guardian Ad Litem's bill was presented without evidence to support it and should, therefore, have been rejected. Ms. Alberswerth quotes the following language from *In re Morrison*, 987 S.W.2d 475, 480 (Mo.App. S.D.1999), as precedent for requiring the Guardian Ad Litem to provide evidence in support of a bill for services:

It is incumbent on a guardian ad litem to show the extent of necessary services

and attorney's fees rendered in regard to matters for which the Appellants, or either of them, could properly be responsible. Such evidence is necessary so that the trial court's award may be based on evidence, and so that an appellate court may have a record to review in determining the propriety of the trial court's discretionary action. As previously mentioned, the mere filing of a document does not put it into evidence. Lack of a notice, a hearing, and any evidence on this issue requires us to reverse the award of Guardian Ad Litem's fees.

She acknowledges, however, that the bill was presented and admitted without objection at trial after being fully and finally tabulated during the proceedings immediately prior to the close of trial.

Ms. Alberswerth did not raise in her point relied on the claim that the Guardian Ad Litem's fees were not properly before the court and the claim was not raised at trial. Because the issue was not raised with the trial court, the issue has not been preserved for appeal. *Schriner v. Edwards*, 69 S.W.3d 89, 100–01 (Mo.App. W.D.2002). The dissimilarity of *Morrison* is evident, however, even in a cursory review of the claim *ex gratia*. In *Morrison*, the Guardian Ad Litem's fee statement was not admitted into evidence during trial; it was filed with the court after the trial had concluded. 987 S.W.2d at 480. In this case, the Guardian Ad Litem testified as to her hours, the statement was admitted into evidence after both parties viewed the billing statement, and neither party objected to the billing statement,

---

**14.** The Guardian Ad Litem interviewed several people, including both parents and both children, did a home visit with Mr. Alberswerth, appeared at depositions, reviewed evidence before trial, and actively participated in the trial. Ms. Alberswerth asserts in her brief that the Guardian Ad Litem's remarks and witness examinations account for 77 pages of the 385 page transcript. This is not an insignificant portion of the transcript and indicates the Guardian Ad Litem was an active participant in the trial.

though they could have objected if they desired. Neither party questioned the Guardian Ad Litem regarding the number of hours she claimed to have been worked or her hourly rate. *See, e.g., Prewitt,* 105 S.W.3d at 877 (affirming judgment ordering payment of Guardian Ad Litem fees because Guardian Ad Litem testified as to the number of hours worked and appellant did not question the Guardian Ad Litem regarding his fees). The claim is without merit.

Ms. Alberswerth concludes that the imposition of attorney's fees and Guardian Ad Litem's fees was meant to be punitive and discourage her from seeking a modification in the future. This, too, is not raised in the point relied on. The claim is without merit, however. No evidence exists that the award of Guardian Ad Litem fees was meant to be punitive or to discourage Ms. Alberswerth from seeking a modification if a change in circumstances occurs.

■■■ Evidence supports the court's award requiring that Ms. Alberswerth pay the full Guardian Ad Litem fees. The Guardian Ad Litem was appointed in response to Ms. Alberswerth's allegations of abuse and neglect, which were not found to be true. Section 452.423.5 leaves the allocation of Guardian Ad Litem fees to the trial court's discretion. The statute does not contain factors that must be considered or guidelines that must be followed when awarding attorney's fees.

Cases affirming judgments requiring the non-alleging party to pay the fees are instructive. In *Homfeld v. Homfeld,* 954 S.W.2d 617, 624 (Mo.App. W.D.1997), the trial court ordered both mother and father to pay a portion of the Guardian Ad Litem fees. Father argued on appeal that this was error because the Guardian Ad Litem was appointed due to mother's allegations about the father and child. *Id.* This court affirmed the judgment. *Id.* It observed that, while a trial court must appoint a Guardian Ad Litem pursuant to section 452.423.2 if allegations of abuse or neglect are asserted, a trial court may appoint a Guardian Ad Litem pursuant to section 452.423.1 in dissolution cases where custody, visitation, or child support is at issue and those issues were present in the case. *Id.* As a Guardian Ad Litem was properly appointed under section 452.423.1 and because section 452.423.5 allowed the court to order payment of the fees by one or both parties, the judgment was not an abuse of discretion. *Id.* Thus, once a Guardian Ad Litem is appointed, whatever the reason, the trial court may order one or more of the parties to pay the fees. The Guardian Ad Litem was properly appointed and the trial court ordered Ms. Alberswerth to pay her fees. That decision is within the trial court's authority and, given that Ms. Alberswerth allegations were not found to be true, does not shock the conscience of the court. There was no abuse of discretion.

■■■ Ms. Alberswerth alludes to the argument that she is financially unable to pay the fees. This is not raised in her point relied on and need not be considered by this court. Nonetheless, this issue is also deemed without merit upon review. Financial inability to pay is not a defense to a judgment requiring payment of Guardian Ad Litem fees.[15] *See, e.g., In re Reeder,* 946 S.W.2d 1, 5–6 (Mo.App. W.D.1997)(*judgment requiring mother to pay portion of Guardian Ad Litem fees affirmed, despite mother's claim she was*

---

15. An exception is if the party is represented by legal aid or another nonprofit organization. *See* § 514.040.3.

*financially unable to do so*). Cases appearing to hold otherwise are distinguishable. In *Dutton v. Dutton*, 668 S.W.2d 585, 592 (Mo.App. E.D.1984), the appellate court determined that a judgment requiring mother to pay a portion of the Guardian Ad Litem fees was an abuse of discretion because of the large difference in incomes between mother and father. The court noted that mother earned approximately $800 per month in income while father earned approximately $2,700 per month in income. *Id.* Due to the difference in income, the appellate court stated "[u]nder these circumstances, neither party should be required to bear the other's attorney fee, and [mother] should not be expected to contribute to the payment of the guardian ad litem fee." *Id.* This case is not binding, though. At the time this case was decided, section 452.423 had not yet been enacted. The *Dutton* court applied section 452.355, which applies to attorney's fees and, as noted, *supra*, explicitly instructs the court to consider the financial resources of the parties and used that statute to resolve both the award of attorney's fees and Guardian Ad Litem fees. Section 452.423 was enacted in 1988 and now governs payment of Guardian Ad Litem fees in dissolution proceedings; section 452.423 does not require consideration of the parties' financial resources. Thus, Ms. Alberswerth's claims of financial inability to pay do not render the court's judgment an abuse of discretion.[16]

The point is granted as to attorney's fees and denied as to the Guardian Ad Litem fees.

### Point IV

In her fourth point on appeal, Ms. Alberswerth argues that the trial court erred when it admitted as evidence the medical log, notes, and records of Dr. Kevin Mays, Trace Alberswerth's treating psychiatrist since June of 2002. Ms. Alberswerth contends that these records should not have been admitted because they were hearsay because Mr. Alberswerth identified Dr. Mays as a witness only fifteen days before trial and because they were admitted in violation of the trial court's pretrial rulings.

On June 8, 2004, trial was scheduled for September 17, 2004. On September 1, 2004, Ms. Alberswerth received notification that Mr. Alberswerth would call Dr. Kevin Mays at trial as an expert witness and that his deposition was scheduled for September 8, 2004. Dr. Mays was Trace Alberswerth's treating psychologist.[17] On September 2, 2004, the next day, Ms. Alberswerth filed several motions with the trial court. One of the motions was a Motion to Strike Expert Witness Opinion and Testimony. In this motion, Ms. Alberswerth complained that neither she nor her attorney had been consulted when the deposition date and time was set. She further complained that Dr. Mays had been identified as an expert witness in an untimely manner and that identifying him as a witness so close to the trial date was unfair and prejudicial. She indicated she would need time to investigate Dr. Mays and to locate counter expert witnesses if

---

16. The statutory findings this court is instructing the trial court to make in Point I have no bearing on this point and the fact that the judgment is remanded in order for those findings to be made does not preclude the award of Guardian Ad Litem fees from being affirmed.

17. Dr. Mays was to testify, as Trace's treating psychologist, regarding the medications Trace was prescribed and his behavioral responses to those medications. He was to testify, as an expert witness, regarding the aggressive behaviors adolescent males typically exhibit and the expected side effects of the medications Trace was prescribed.

necessary. Ms. Alberswerth also filed a Motion to Quash Depositional Notices, including the depositional notice for Dr. Mays. The last relevant motion Ms. Alberswerth filed was a Motion in Limine, which sought to prevent the appearance of Dr. Mays and any anticipated opinion or testimony to be elicited from him at trial. As to these motions, the trial court's docket sheet states:

Respondent's Motion to Strike Expert Witness Opinion and Testimony is granted but the court will allow Dr. Mays' testimony as to explaining information contained in medical reports previously provided to counsel.

Respondent's Motion Quash depositional Notices is Granted

Respondent's Motion in Limine is denied.

The docket entry is the only evidence in the record of how the court ruled with respect to these motions.

Before trial, the parties agreed to the admittance into evidence of a letter from Dr. Mays, dated September 9, 2004, regarding the medications Trace Alberswerth was taking, his behavioral response, and the increasing aggression adolescent males may experience. That letter was admitted into evidence without objection. The letter described the various medications and dosages Dr. Mays had prescribed, the changes in medications, and Trace Alberswerth's behavioral responses to the medications and change in medications. In addition, portions of Dr. Mays' records were admitted, over Ms. Alberswerth's objections. Ms. Alberswerth was sent a copy of these records on September 9, 2004, pursuant to section 490.692.[18] Ms. Alberswerth contends that, by allowing the medical logs to be admitted, the trial court,

in effect, allowed Dr. Mays to testify *in absentia*.

The trial court granted Ms. Alberswerth's Motion to Quash Depositional Notices and Ms. Alberswerth does not contend that Dr. Mays' deposition was taken. Thus, this motion is not at issue. Instead, Ms. Alberswerth claims that admitting the medical logs into evidence was contrary to the court's granting of her Motion to Strike Expert Witness Opinion and Testimony.

■ The Motion to Strike Expert Witness Opinion and Testimony and the Motion in Limine were similar. Both the Motion to Strike Expert Witness Opinion and Testimony and the Motion in Limine sought to prevent Dr. Mays from rendering an expert opinion or testifying. Both motions also cited the same reasons for the request—namely, that Dr. Mays was not timely disclosed as an expert witness. In essence, the motions were identical, with different labels. "In limine" is defined as "in or at the beginning" and a motion in limine is traditionally used as a way of suppressing testimony or evidence at the beginning of litigation. *Rhodes v. Blair*, 919 S.W.2d 561, 563 (Mo.App. S.D.1996). When objecting at trial to the admission of the medical records, Ms. Alberswerth objected because the issue of the admissibility of the medical records "was previously addressed and covered in the Motion in Limine that was argued in this case." She, too, referred to the Motion to Strike Expert Witness Opinion and Testimony as a motion in limine. The Motion to Strike Expert Witness Opinion and Testimony was also a motion in limine.

■ The trial court conditionally granted the Motion to Strike Expert Witness Opinion and Testimony, but denied the Motion in Limine. An in limine ruling

18. All citations to section 490.692 are to § 490.692, RSMo 2000.

is a preliminary expression of the court's opinion regarding the admissibility of the evidence at issue. *Evans v. Wal-Mart Stores, Inc.*, 976 S.W.2d 582, 584 (Mo.App. E.D.1998). "The trial court is not bound by its in limine ruling and may admit the evidence when offered at trial." *Id.* Thus, an order sustaining a motion in limine and excluding evidence is an interlocutory order and is subject to change by the trial court during the course of the trial; the trial court is free to alter its pretrial ruling and admit the evidence. *Smith v. Associated Natural Gas Co.*, 7 S.W.3d 530, 536 (Mo.App. S.D.1999); *Choate v. Natvig*, 952 S.W.2d 730, 733 (Mo.App. S.D.1997). The trial court Motion to Strike Expert Witness Opinion and Testimony was a motion in limine and the trial court could reverse its ruling at trial.

The question now considered is whether the trial court erred in and abused its discretion by admitting the medical logs at trial without considering the conditionally granted Motion to Strike Expert Witness Opinion and Testimony. Ms. Alberswerth states in her point relied on that the records were hearsay and improper given the untimely disclosure of Dr. Mays as an expert witness. These contentions are not addressed in the argument portion of her brief, which focuses solely on the fact that the trial court acted inconsistently with its pretrial ruling, and are abandoned, *State v. Massey*, 156 S.W.3d 789, 790 (Mo.App. W.D.2005), but are considered ex gratia.

The admissibility of evidence is within the discretion of the trial court and the trial court's decision is reviewed for an abuse of discretion. *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 386 (Mo.App. W.D.1999). There has been an abuse of discretion when the trial court's ruling is so unreasonable and arbitrary that it shocks the sense of justice and is clearly against the logic of the surrounding circumstances. *Eltiste v. Ford Motor Co.*, 167 S.W.3d 742, 757 (Mo.App. E.D.2005). If reasonable people could disagree about the propriety of the trial court's judgment, it cannot be said there was an abuse of discretion. *Zimmer v. Fisher*, 171 S.W.3d 76, 79–80 (Mo. App. E.D.2005).

"Errors regarding the admission or exclusion of evidence will result in reversal only if there is substantial and glaring injustice." *Legg*, 18 S.W.3d at 386 (internal citations and quotation marks omitted). "When reviewing matters involving admission of evidence, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial as to deprive the defendant of a fair trial." *State v. Moore*, 88 S.W.3d 31, 36 (Mo.App. E.D.2002). An error in the admission of evidence is prejudicial if it affects the result or outcome of the trial. *Riley v. Union Pacific R.R.*, 904 S.W.2d 437, 443 (Mo.App. W.D.1995).

Missouri trial courts are vested with broad discretion in administering the rules of discovery and an appellate court will not disturb the trial court's ruling absent an abuse of discretion. *Id.* at 446. Additionally, examination of a witness whose name has not been disclosed, despite being requested, is a matter resting within the sound discretion of the trial court. *Id.* "In unusual cases, that discretion has even extended to the point of allowing the examination of a witness whose name, though requested, was not disclosed, where there was an opportunity for an overnight deposition." *Gantt v. Baldwin*, 927 S.W.2d 957, 960 (Mo.App. W.D.1996). *See also Riley*, 904 S.W.2d at 443 (affirming trial court's decision to not strike witnesses identified four days before trial, despite adverse party's objection that

he lacked sufficient time to depose the identified witnesses).

■ In this case, Dr. Mays was disclosed as a witness sixteen days before trial.[19] Ms. Alberswerth claims this was untimely. Missouri cases have held that "[u]ntimely disclosure of an expert witness' identity is so offensive to the underlying purposes of the discovery rules that prejudice may be inferred." *Bacon v. Uhl,* 173 S.W.3d 390, 398 (Mo.App. S.D.2005). The rule that prejudice may be inferred, however, does not mean that prejudice must be inferred. The stipulated letter describes the medication names and quantities Trace Alberswerth was taking and the effects on his behavior. It describes the different combinations of medication types and quantities that were tried and their impact on Trace Alberswerth's behavior. The medical logs admitted consist of a medication log, which lists the date, name of the medication, dosage, and any refills and of a log with the date and any notes regarding the medication and a handwritten log describing Trace's reaction to medication as relayed to Dr. Mays or his staff by Trace or his parents. Much of this second log is not legible, and what can be read is not harmful to either parent. It merely states Trace's behavior and other reactions in response to the changes in medication. The contested medical logs are not prejudicial to either party. The court knew that Trace Alberswerth had certain behavioral problems and was taking medication for those problems. The medical logs neither incriminate nor place blame on one parent as opposed to the other; they merely state the medication

prescribed and the behavioral response to the medication. An in-depth investigation into Dr. Mays' background or the securing of counter expert witnesses was unnecessary as there was nothing harmful to counter. As far as Dr. Mays' identity as an expert witness is concerned, the untimely disclosure was not prejudicial and the trial court did not abuse its discretion in allowing their admittance at trial.

■ Neither was the medical logs inadmissible hearsay. Hearsay is an out of court statement made by someone not before the court that is offered to prove the truth of the matter asserted. *State v. Larson,* 941 S.W.2d 847, 854 (Mo.App. W.D.1997). Hearsay is not admissible at trial unless an exception to the hearsay rule applies; one of the exceptions is the business records exception. *Id.*

■ Section 490.680 [20] sets forth the requirements for a document to be admitted under the business record exception to the hearsay rule. The requirements are that the custodian testifies to its identity and mode of preparation, that it was made in the course of business at or near the time of the event, and that the court determines the sources of information, method, and time were such so as to justify admission of the records. *C & W Asset Acquisition, LLC v. Somogyi,* 136 S.W.3d 134, 138 (Mo.App. S.D.2004). "Thus, the 'bottom line' regarding the admissibility of the business records is the discretionary determination by the trial court of their trustworthiness." *Id.* A trial court is afforded broad discretion in determining whether the parties complied with

---

19. The certificate of service, Mr. Alberswerth's brief, and the Motion to Strike Expert Witness Opinion and Testimony filed by Ms. Alberswerth state that Ms. Alberswerth received notice on September 1, 2004. In her brief, Ms. Alberswerth states she did not receive notice until September 2, 2004. It

seems likely that notice was sent on September 1, but a one day discrepancy has no impact on our conclusion.

20. All citations to section 490.680 are to § 490.680, RSMo 2000.

section 490.680. *State v. Williamson,* 836 S.W.2d 490, 497 (Mo.App. E.D.1992).

 Professional records of medical doctors are within the purview of section 490.680 and, upon proper identification and qualification, are admissible into evidence. *Rossomanno v. Laclede Cab Co.,* 328 S.W.2d 677, 681 (Mo. banc 1959). Verification from all persons who contributed to the business records is not necessary. *Id.* at 682.

Section 490.692 allows the records to be admitted without the custodian having to appear in court. *Somogyi,* 136 S.W.3d at 138. It allows certified copies of business records to be admitted at trial if all parties are served with the records and a certifying affidavit at least seven days before trial. *State v. Calhoon,* 7 S.W.3d 494, 495 (Mo.App. W.D.1999). The business records exception to the hearsay rule allows qualified records to be introduced as evidence without the person who prepared the records having to personally appear in court. *Id.* All business records, including medical records, may be admitted under section 490.692, if they comply with it and section 490.680. *See, e.g., State v. Goodson,* 943 S.W.2d 239, 240 (Mo.App. E.D.1997). Even under section 490.692, "the court's decision whether to admit the business records remains a discretionary determination of the trustworthiness of the records." *Somogyi,* 136 S.W.3d at 138.

Ms. Alberswerth was sent a copy of the contested medical records on September 9, 2004, pursuant to section 490.692. Ms. Alberswerth does not claim that Mr. Alberswerth failed to comply with section 490.680 or 490.692. The trial court determined that the medical records were trustworthy and that determination was not an abuse of discretion.

Section 490.692.2 requires that the records and affidavit be served at least seven days prior to trial. The certificate of service states that the business records and affidavit were sent to Ms. Alberswerth on September 9, 2004. The affidavit indicates it was sworn on September 10, 2004, however. If it was sworn on September 10, 2004, it would fail to comply with the seven day requirement as trial was had on September 17, 2004. This court need not determine which date is accurate, however, as, even if the seven day notice was not complied with and admission of the medical records was error, it was not prejudicial. "To warrant reversal, improperly admitted evidence must have prejudiced the defendant. Unless the error materially affects the merits of the action, the judgment should not be reversed." *Larson,* 941 S.W.2d at 854. The point is denied.

### Conclusion

The judgment is reversed and remanded with instructions for the trial court to make the findings required by section 452.375.6 and to obtain information regarding both Mr. and Ms. Alberswerth's financial resources as required by section 452.355.1 if an award of attorney's fees is made. All other aspects of the judgment are affirmed.

All concur.